# **<u>EXHIBIT A</u>**

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**JUNE 2023**

E-Filing Number: 2306014568

**00571**

| | |
|---|---|
| PLAINTIFF'S NAME<br>KAITLIN BAILEY | DEFENDANT'S NAME<br>A PLACE FOR ROVER, D/B/A ROVER |
| PLAINTIFF'S ADDRESS<br>123 S. BROAD STREET PHIILADELPHIA<br>PHIILADELPHIA PA 19109 | DEFENDANT'S ADDRESS<br>1000 2ND AVENUE, STE. 3700<br>SEATTLE  WA 98104 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME<br>ANTOINE SMITH |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS<br>29 EDGEWATER AVE<br>WESTVILLE NJ 08093 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 1 | 2 | ☒ Complaint    ☐ Petition Action    ☐ Notice of Appeal<br>☐ Writ of Summons    ☐ Transfer From Other Jurisdictions | | |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

CASE TYPE AND CODE
2O – PERSONAL INJURY – OTHER

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|
| **FILED<br>PRO PROTHY**<br>JUN **06** 2023<br>**G. IMPERATO** | YES          NO |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>KAITLIN BAILEY</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY<br>AMANDA J. LORENTSON | ADDRESS<br>123 S BROAD ST<br>PHILADELPHIA PA 19109 |
|---|---|
| PHONE NUMBER<br>(215)545-8800 | FAX NUMBER<br>(215)545-8805 | |
| SUPREME COURT IDENTIFICATION NO.<br>328911 | E-MAIL ADDRESS<br>alorentson@mceldrewpurtell.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY<br>*AMANDA LORENTSON* | DATE SUBMITTED<br>Tuesday, June 06, 2023, 08:35 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

**McELDREW PURTELL**
John J. Coyle, Esquire
Amanda Jonas Lorentson, Esquire
Attorney I.D. #: 312084/ 328911
123 South Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800
jcoyle@mceldrewpurtell.com
alorentson@mceldrewpurtell.com

*MAJOR JURY MATTER*



*Filed and Attested by the
Office of Judicial Records
06 JUN 2023 08:35 pm
G. IMPERATO*

*Attorneys for Plaintiff*

| | |
|---|---|
| Kaitlin Bailey <br><br> **Plaintiff,** <br><br> vs. <br><br> **A PLACE FOR ROVER, d/b/a ROVER** <br> 1000 2nd Avenue, Ste. 3700 <br> Seattle, WA 98104; <br><br> and <br><br> **ANTOINE SMITH** <br> 29 Edgewater Avenue <br> Westville, NJ 08093. <br><br> **Defendants.** | **IN THE COURT OF COMMON PLEAS** <br> **PHILADELPHIA COUNTY** <br><br><br> **JUNE TERM, 2023** <br><br> **NO.** |

## NOTICE TO DEFEND

| NOTICE | A VISO |
|---|---|
| **You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.** | **Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisions de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.** |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |
| **Philadelphia Bar Association Lawyer Referral and Information Service** <br> **One Reading Center Philadelphia, Pennsylvania 19107 (215) 238-6333** <br><br> **TTY (215) 451-6197** | **Asociacion De Licenciados De Filadelfia** <br> **Servicio De Referencia E Informacion Legal** <br> **One Reading Center Filadelfia, Pennsylvania 19107 (215) 238-6333** <br> **TTY (215) 451-6197** |

**McELDREW PURTELL**                                    *MAJOR JURY MATTER*
John J. Coyle, Esquire
Amanda Jonas Lorentson, Esquire
Attorney I.D. #: 312084/ 328911
123 South Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800                                          *Attorneys for Plaintiff*
jcoyle@mceldrewpurtell.com
alorentson@mceldrewpurtell.com

| | |
|---|---|
| **Kaitlin Bailey** | **IN THE COURT OF COMMON PLEAS** |
| **Plaintiff,** | **PHILADELPHIA COUNTY** |
| **vs.** | |
| **A PLACE FOR ROVER, d/b/a ROVER** | **JUNE TERM, 2023** |
| 1000 2nd Avenue, Ste. 3700 | |
| Seattle, WA 98104; | **NO.** |
| and | |
| **ANTOINE SMITH** | |
| 29 Edgewater Avenue | |
| Westville, NJ 08093. | |
| **Defendants.** | |

## CIVIL ACTION COMPLAINT
### PARTIES AND JURISDICTION

1.      Plaintiff, Kaitlin Bailey, is a 25-year-old woman who is a citizen of and resides in

the Commonwealth of Pennsylvania and who can be contacted through her counsel, Amanda Jonas

Lorentson, Esquire, at McEldrew Purtell, 123 S. Broad St., Suite 2250, Philadelphia, PA 19102.

Plaintiff was 24 years old when she was a victim of the tortious conduct described fuller herein.

Plaintiff's address is not contained in the Complaint to protect the privacy of Plaintiff.

2.      Defendant A Place for Rover d/b/a Rover (hereinafter "Rover") is a foreign

business corporation or authorized legal entity operating in the Commonwealth of Pennsylvania,

with a business address located at 1000 2nd Avenue, Suite 3700, Seattle WA 98104.

3.      Defendant, Antoine Smith, is an adult individual who maintains a local office at

Temple Athletics, STAR Complex 1816 N. 15th Street, Third Floor, Philadelphia, PA 19121.

1

Case ID: 230600571

4.      Venue is proper in this Court under Pennsylvania Rules of Civil Procedure 1006 and 2179 as Defendant Smith regularly and continuously conduct business in Philadelphia, maintain a local office at Temple Athletics, STAR Complex, 1816 N. 15th Street, Third Floor, Philadelphia, PA 19121, Plaintiff is a resident of Philadelphia County, and the conduct at issue that gave rise to this complaint occurred in Philadelphia County and Rover regularly and continuously conducts business in Philadelphia County.

5.      At all times material hereto, Plaintiff worked as a Pet Care Provider for Defendant Rover.

6.      At all times material hereto, Defendant Smith was a Pet Owner using the Defendant Rover's platform.

## PRELIMININARY STATEMENT

7.      Defendant Antoine Smith victimized dozens of women by secretly filming them with hidden cameras in his home while they showered, used the bathroom, slept, and were in various stages of undress. While his victims all believed they were at Defendant Smith's home to dog sit, Smith was watching their most private moments from high tech cameras disguised as clocks, Bluetooth speakers, and other benign objects. Smith did not just record his victims' comings and goings. He took great pains to put his victims in vulnerable situations, and engineered scenarios to capture video footage.

8.      Although Defendant Smith's behavior is shocking, his conduct is no surprise to Defendant Rover – as will be described more fully in the paragraphs that follow.

9.      Rover, armed with the knowledge, means and ability to prevent Defendant Smith from preying upon his victims, chose to prioritize profits over the safety, privacy, and dignity of Pet Care Providers, like the Plaintiff. Because of Rover's acts and omissions, Plaintiff was victimized by Defendant Smith.

Case ID: 230600571

## **OPERATIVE FACTS**

10.     Rover is a company that provides pet-care services. Rover hosts a website and accompanying mobile application where Pet Owners interact with, message, and hire Pet-Care Providers.

11.     It is free to make a Rover profile as a Pet Owner. There is no "service" charge billed to a Rover customer to use the website.

12.     Rover makes money by receiving a portion, approximately 20 percent, of its Provider's earnings.

13.     Rover's business model – a geographical search through local sitters – coupled with the types of services offered by Rover, is one that facilitates not just interactions between complete strangers but overnight stays in Pet Owner's—complete strangers—homes.

14.     Unlike traditional boarding or doggy daycare, Rover encourages "in home" service including "house sitting" and "drop-in visits."

15.     This service is advertised on Rover's platform:

 House Sitting
Your sitter takes care of your pets and your home. Your pets will get all the attention they need without leaving home.

 Drop–In Visits
Your sitter drops by your home to play with your pets, offer food, and give potty breaks or clean the litter box.

3

Case ID: 230600571

16.     Both options require that Providers enter and spend significant time in a Pet Owner's home.

17.     Rover also requires that in-home service Providers obey instructions on sleeping arrangements and use of the home:

> • Be respectful of pet parents' homes and property. Follow their instructions pertaining to bedrooms and bathrooms, eating and/or drinking, guests (including other pets), and home access information.

18.     It is clear that these pet care options, and corresponding rules, put Providers in vulnerable situations.

19.     In order to convince Pet Care Providers to look past these obvious safety concerns Rover promises "safety" to those using its platform.

20.     According to Rover, "[s]afety is at the heart of what we do."



21.     Rover offers Providers 24/7 support, "[w]e're here for you—24 hours a day, seven days a week."

22.     Unfortunately, this commitment is merely lip service as Rover, despite profiting immensely from its mostly female Providers, does little to ensure their safety.

Case ID: 230600571

23.     In fact, many of Rover's business practices actively detract from it.

24.     As a preliminary matter, according to census data, 80.3% of all pet sitters are women, this is a statistic that Rover—who requires potential Providers identify their gender when creating a profile—is well aware of.

25.     Rover promised safety to these women.

26.     Instead, Rover created an environment where individuals like Defendant Smith could easily locate, contact, and prey upon young women. This is not a theoretical risk; this is a reality that Rover has knowingly and recklessly enabled.

27.     A simple Google search of "Rover" directs to a popular reddit page entitled "RoverPetSitting."

28.     A recent post entitled "Why do Men Think Rover is a Dating App?" provides an example of the types of messages female Providers are inundated with on the **Rover monitored, controlled, and regulated** internal messaging platform.

Case ID: 230600571

29.    The Pet Owner books a fake "House Sitting" request and sends a harassing message asking the Provider for her phone number. Below is an example of such an exchange:




30.    Importantly, even though the Provider does not respond and declines the request, there is nothing to prevent the Pet Owner from messaging her again a day later—which regularly occurs.

31.    The Provider is then prompted to "Propose a Meet & Greet" with this individual.

6

32. Part of the reason that Pet Owners are able to identify and harass "exceptionally beautiful" young women, is because Rover requires that Providers create detailed profiles and upload personal photographs to attract customers:

**Add a profile photo**

Your profile photo will appear next to your name in search and in Rover Messages when you're communicating with a client. We recommend adding a clear, well-lit photo of your face.

33. Rover does not require Pet Owners to upload photographs, but explicitly directs Providers on what kind of photographs to use: "[s]elect a primary profile photo of yourself to **clearly show your face…**Set aside the sunglasses and smile!" (emphasis in original).

34. Rover's Terms of Service state that uploading personal photographs is a requirement of Providers, not for the Provider's benefit, but for Rovers: "[w]e may require or allow you…to submit or upload text, photographs, images, videos, reviews, information and materials to your profile on the Rover Service or otherwise in connection with using the Rover Service and/or participating in promotional campaigns we conduct on the Site."

35. Next, while Providers are required to complete a background check before providing services, there is no vetting process of any kind for Pet Owners.

36. Meaning individuals with prior criminal histories, like Defendant Smith, could freely use the platform.

37. Similarly, while Rover Providers are told to "report and block anyone who acts inappropriately," there is nothing that prevents Pet Owners from creating and deleting multiple

7

Case ID: 230600571

profiles—thus allowing predatory users to effectively dodge any ramifications from unsavory behavior.

38.     Rover posts "Community Guidelines" for "Pet parents" on its website to "protect" Providers.

39.     Part of the Community Guidelines include a "Meet & Greet" between Providers and Pet Owners in a "safe" "public place" before bookings and directions to "[k]eep] all business and communication about Rover bookings on the Rover website or app."

40.     However, Rover's application permits Pet Owners to communicate "offline," thus circumventing any safety measures promised by Rover.

41.      The standard of care for applications that involve these stranger-to-stranger interactions, such as Airbnb, is to prevent dangerous, "offline" communications—or conversations outside of the platform, by preventing users from sending email addresses or cellphone numbers through the application's messaging system before a booking has been made. An example from Airbnb is shown below:



42.     Rover notably does not have this feature.

Case ID: 230600571

43.    One serious safety and privacy concern facing Providers, is the use of covert hidden cameras by Pet Owners.

44.    Rover acknowledges this risk by suggesting that "sitters consider asking pet parents if security cameras are located in or around their home" because such devices are "prohibited in private areas, such as bedrooms and bathrooms that have been designated for your use."

45.    However, Rover is not only aware of hidden camera usage as a theoretical risk, it is aware that hidden cameras usage is rampant, that the hidden cameras are not disclosed, and that women – who comprise the vast majority of Providers – are recorded in vulnerable and private situations.

46.    Even though Rover's Community Guidelines state that Pet Owners must disclose indoor cameras, the use of hidden cameras does not result in automatic deactivation from the application.

47.    In fact, Rover's Terms of Service which "govern your use of our software applications, resources and services" are completely silent on hidden or undisclosed camera use.

48.    Rover hosts and moderates a "Q&A Community" on its website to "[c]onnect [Providers] with fellow dog lovers and learn from one another" – importantly this forum is hosted and linked on Rover's main website.

49.    A simple scan of the thousands of posts and comments shows countless complaints about hidden cameras in Pet Owner homes.

Case ID: 230600571

50.    Hailee W., a Rover Provider, authored a post entitled "I'm very uncomfortable with my visit because of a camera/owner behavior, how should I proceed?"



51.    Marie F., who appears to be a Rover moderator, responded that the Provider should consider apologizing to the owner that violated the policy and instructed the Provider on how to avoid a bad review.

Hey I'm so sorry to hear about your experience! Your safety comes first and perhaps you should avoid this client for future bookings. Why are they watching you while you're sleeping, that's very sketchy. To avoid this happening in the future, definitely let the client know before booking that you have a dog of your own that needs care. That you will need to leave the house at this particular time. I'm not sure if you disclosed to them in the meet and greet. Anyway if you are worried about receiving a bad review, I'd say this "I'm sorry to hear your experience with me wasn't up to your expectations. Your dog was my first priority and it was a pleasant experience until the camera situation. I'm very sorry for frustrating you and will take your feedback seriously in order to improve myself. I hear you where you are coming from, as a pet owner myself, your pet means the world to you. I assure you that my intentions were good. Perhaps there was a misunderstanding in our meet and greet. Before writing a review, please be considerate as this is a job I take very seriously. As a client, I will be fair with my review as well. I don't want this to hinder our future bookings with others. I really wish you and pet's name well. Hope you can understand where I'm coming from."

From years of customer service experience, my best advice is to de-escalate the situation by apologizing and putting yourself in their shoes (even though\ you are the one that deserves an apology). Sometimes people are just miserable and we just have to take the L - keep it moving.

Hope this helps and hope it goes well with the client.

52.    Another Rover Provider, Rachel K., posted "I just found a camera in the bathroom of the house I'm watching. What do I do?"

53.    Lyric T., a Rover Provider, posted "I just found a camera in the bathroom of the house I'm watching. What do I do?" and "is there something I can do about a client who didn't tell me and I found out on my own, It just makes me very uncomfortable as a young girl. T[h]oughts?"

54.    Erica M., a Rover Provider, posted "What to do when you find cameras in a clients house?"

55.    Julia C., a Rover Provider, posted "What do you do when the owner doesn't tell you about cameras?"

56.    Jessica L., a Rover Provider, posted "…I just got back from a pet's house and I'm very creeped out because found cameras in the kitchen and in the bathroom as I was leaving from the stay. Not sure how to handle this."

57.    Sadie P., a Rover Provider, posted "Ugh, I found a hidden camera in the bathroom of the client I am sitting for. This really creeps me out."

58.    Kristen, W., a Rover Provider, posted "…I did a job and found a camera in the bedroom window facing the room and not outside. They had it behind the blinds and kept them open all the time. I did not see it at first and creeped me out since I was changing in the bedroom."

59.    Notably, nearly all Providers complaining about hidden cameras are women, many of whom are or appear to be college aged.

60.    A concerning theme from these posts is that Providers, even if they are made to feel unsafe or uncomfortable, are encouraged to tolerate inappropriate behavior to avoid losing their ability to work with Rover.

61.    Providers who refuse to comply with unsafe or uncomfortable requests from Pet Owners can receive negative reviews or low performance scores—both of which negatively impact

11

their ability to attract clients. Additionally, Providers who cancel bookings –regardless of the reason—face the possibility of deactivation from the Rover platform, creating a perverse incentive for Providers to keep quiet about abusive conduct by Pet Owners.

62.     It is against this backdrop, where in late 2020 or early 2021, Defendant Antoine Smith started using Rover to prey upon young women in Fort Collins, Colorado and Philadelphia, Pennsylvania.

63.     Defendant Smith created multiple Rover profiles that were active in both Colorado and Pennsylvania.

64.     Prior to relocating to Philadelphia, Defendant Smith's Rover account was reported to Rover by Pet Care Providers in Fort Collins for inappropriate conduct. Based on information and belief, Rover took no steps to remove Smith from the platform.

65.     Defendant Smith actively used the Rover platform in Philadelphia at least up until March of 2023.

66.     In March of 2023, Defendant Smith relocated to Westville, New Jersey. It is unknown if Smith is continuing to engage on the platform.

67.     Defendant Smith used the Provider's profile pictures to target and exclusively message young women.

68.     Defendant Smith utilized his status as a "new coach at Temple University" to prey upon these young women.

69.     Defendant Smith requested "drop-ins" and "house sitting" through the Rover application. Both options would require Providers to stay in his home for an extended period of time.

Case ID: 230600571





70.    Unbeknownst to these women, Defendant Smith's homes in Fort Collins and in Philadelphia had numerous covertly placed hidden "spy" cameras, disguised to look as household objects.

71.    All of the cameras used by Defendant Smith were capable of recording audio and video.

72.    Although the investigation may yield additional devices the following are known to Plaintiff at this time:

      a.  **Wall Clock**
      b.  **Bluetooth Speaker**
      c.  **Digital Alarm Clock**
      d.  **AC Adapter**

73.    The following pages contain product images of each device and photographs of the devices in Smith's homes.

13





Bluetooth camera in the bedroom designated for dog sitters in Defendant Smith's home in Philadelphia.

Case ID: 230600571



Bluetooth camera in the bedroom designated for dog sitters in Defendant Smith's home in Philadelphia.

Case ID: 230600571



Bluetooth camera in the master bathroom designated for dog sitters in Defendant Smith's home in Philadelphia.

16

Case ID: 230600571





Digital alarm clock camera in the bedroom designated for dog sitters in Defendant Smith's home in Philadelphia.

Case ID: 230600571





Digital alarm clock camera in the bedroom designated for
dog sitters in Defendant Smith's home in Philadelphia.



18

Case ID: 230600571





AC Adapter camera in the bathroom designated for dog sitters in Defendant Smith's home in Philadelphia.



Case ID: 230600571



AC Adapter camera in the living room in Defendant Smith's home in Philadelphia.



AC Adapter camera facing downstairs bathroom in Defendant Smith's home in Philadelphia.

20

Case ID: 230600571



Wall clock camera in the living room in Defendant Smith's home in Fort Collins.



21

Case ID: 230600571



Wall clock camera in the living room in Defendant Smith's home in Philadelphia.

22

Case ID: 230600571







23

Note the two photographs to the left are taken early in 2022. The wall clock charging cord is visible. The photograph to the right, taken at some point after, shows that Smith shifted the position of the clock closer to the television to disguise the cords.

Case ID: 230600571

75. Based on information and belief, Antoine Smith was using his cell phone to actively monitor the live video feeds from the hidden cameras.

76. Text messages exchanged with other dog sitters during the relevant timeframe reveal that he was not only monitoring their comings and goings through the cameras, but also attempting to stage situations where they would unwittingly be naked or in other compromising situations on camera.

77. This included suggestions that the young women drink alcohol that he would leave out.



> Get dinner, cheesecake, take a long hot shower, and pound a bottle of wine lol.

> Oh that's great, not sure if ____ told you but the shower water softener comes on at 9, ____ said it's great with the rain fall shower. Also please take his food and water out his crate this evening so it stays dry please. You can definitely use that shower I got all kinds of stuff in there.

> She will be here Friday morning. So you're all set. I got a ton of wine restocked. I'll have some good food and snacks here. I'll have fresh bedding on the bed, I scrubbed the house great, your massager charged, and new bathroom shower stuff for you. You can company here also anytime you like, I'm just super grateful for your help and loving Legend

78. Smith would encourage victims to use his shower and if victims did not shower, Smith would follow up the next day by asking "why."

Case ID: 230600571

79.    Smith would try to get victims who were only supposed to drop by to let the dog use the bathroom or take a walk to stay longer and sleep in the bed he monitored with cameras.



80.    Smith encouraged victims to invite other women over and "party."



Case ID: 230600571

81.    Smith set up a massage room in his home and purchased multiple massage guns including a small device that "look[ed] like a vibrator."





82.    Defendant Smith's cameras were first discovered by a Rover Provider in April 2022. Defendant Smith had contacted this young woman through Rover and requested she stay overnight to dog sit at his home in Philadelphia.

83.    On April 9, 2022, the dog sitter arrived at Smith's home around 9 AM. Defendant Smith requested an overnight stay from 9:00 AM on April 9, 2022, until April 10, 2022 9:00 AM.

84.    During the evening of April 9, 2022, the sitter noticed a suspicious device plugged into an outlet directly next to the shower.

85.    The young woman realized the device, which looked like an AC adapter, was a hidden camera. She unplugged the device from the wall and photographed it.

Case ID: 230600571

86.     The woman then inspected the bedroom and located a digital alarm clock that also had a hidden camera. The metadata on these images reveal that she photographed the devices between 5:56 PM and 5:58 PM.

87.     At the same time the woman unplugged and photographed the AC adapter at 5:56 PM, Defendant Smith alerting to the fact that his camera had been unplugged, texted her an update.

88.     Minutes later, Defendant Smith notified the young woman that his plans had suddenly changed and that he would in fact be able to come home and did not need her to stay overnight.




89.     When confronted about the camera, Smith lied and told her "[t]hats a Bluetooth to my cd not a camera."

Case ID: 230600571

90.     This young woman left Smith's home immediately and reported his conduct to Rover and filed a police report with the Philadelphia Police department.

91.     As of the date of this Complaint, the police investigation is still ongoing.

92.     In March of 2022, Defendant Smith contacted Plaintiff through the Rover application and requested she stay overnight to dog sit at his home in Philadelphia.

93.     Plaintiff dog sat for Defendant Smith on two occasions including overnight stays. Plaintiff used the bathroom, showered, was nude and in various stages of undressing while Defendant Smith secretly recorded her.

94.     Defendant Smith did not inform Plaintiff that he had the above hidden cameras in his home.

95.     Defendant Smith designated a specific bedroom and bathroom for Plaintiff's use.

96.     Both the bedroom and the bathroom contained hidden cameras.

97.     Defendant Smith encouraged Plaintiff to shower and drink while she stayed over.

98.     As a result of the tortious conduct of the Defendants, Plaintiff has dealt with anxiety, stress and panic, and will likely need psychological care in the future.

**COUNT I**
**CIVIL LIABILITY UNDER 18 PA. CONS. STAT. ANN. § 3051 FOR VIOLATION**
**PENNSYLVANIA HUMAN TRAFFICKING STATUTE**
**PLAINTIFF VS. ALL DEFENDANTS**

99.     Plaintiff incorporates by reference the allegations contained in all previous paragraphs as if fully set forth at length herein.

100.    Defendant Smith intentionally targeted women on the Rover platform for the purposes of recording obscene images and video through hidden cameras in his home.

Case ID: 230600571

101.    Defendant did in fact record/prepare/transmit obscene footage of Plaintiff while she was naked, used the bathroom, and showered.[1]

102.    Plaintiff without her knowledge or consent appeared in this obscene footage.

103.    Defendant Rover profited from Plaintiff, a Provider on the Rover website.

104.    Defendant Smith was able to prey upon Plaintiff because of his uninterrupted access to the Rover website—despite having been reported on the application before. Defendant Rover exercised exclusive control over Smith's ability to access/contact/locate Plaintiff.

105.    Defendants' actions violate the Pennsylvania Human Trafficking Statute.

106.    As a direct and proximate result of Defendants' conduct, Plaintiff was sexually exploited, causing severe injuries to Plaintiff including, but not limited to, physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future.

107.    Due to Defendants' acts and omissions individually and/or by and through their actual or apparent agents, servants and employees acted outrageously and in reckless disregard for the health and welfare of Plaintiff warranting the imposition of punitive damages.

WHEREFORE, Plaintiff demands judgment in her favor and against the Defendants together with an award of compensatory and punitive damages against the Defendants in an amount in excess of the jurisdictional limits of compulsory arbitration, plus costs, interest, and such further and additional relief as deemed just and proper by this Honorable Court.

**COUNT II**
**VIOLATION OF 18 P.A. C.S. § 5703-INTERCEPTION, DISCLOSURE OR USE OF**
**WIRE ELECTRONIC OR ORAL COMMUNICATIONS**
**PLAINTIFF VS. DEFENDANT ANTOINE SMITH**

---

[1] *Commonwealth v. Yannuzzi*, 270 A.3d 1135 (Pa. Super. Ct. 2021)

29

Case ID: 230600571

108.    Plaintiff incorporates by reference the allegations contained in all previous paragraphs as if fully set forth at length herein.

109.    While staying in Defendant's home, Plaintiff engaged in oral communications.

110.    Plaintiff, who was not warned about hidden cameras had a justifiable expectation of privacy under the circumstances that her communications would not be intercepted.

111.    Defendant Smith's recording of Plaintiff with hidden cameras with video and audio capabilities is in direct violation of 18 P.A. C.S. § 5703 which prohibits the intentional interception or endeavors to intercept any wire, electronic or oral communication.

112.    Any person whose wire, electronic or oral communication is intercepted, disclosed, or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses, or uses or procures any other person to intercept, disclose or use, such communication.

113.    As a direct and proximate result of Defendants' conduct, Plaintiff was sexually exploited, causing severe injuries to Plaintiff including, but not limited to, physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future.

114.    Due to Defendant's acts and omissions individually and/or by and through their actual or apparent agents, servants and employees acted outrageously and in reckless disregard for the health and welfare of Plaintiff warranting the imposition of punitive damages.

WHEREFORE, Plaintiff, pursuant to provisions of 18 Pa. C.S.A § 5725, requests that judgment be entered in her favor and against the Defendant for actual damages of $1,000 for each unlawful interception averred herein together with interest thereon to the date of satisfaction thereof and an award also pursuant to the statute, of any and all costs, including reasonable

Case ID: 230600571

attorneys' fees, expenses and punitive damages and other such forms of relief or remedy which this Court deems just and equitable.

## COUNT III
## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>
## PLAINTIFF v. DEFENDANT ANTOINE SMITH

115.    Plaintiff incorporates by reference the allegations contained in all previous paragraphs as if fully set forth at length herein.

116.    Smith's actions of taking the aforementioned photographs and videos were intentional.

117.    Smith's actions of taking the aforementioned photographs and videos were so outrageous and extreme that it went beyond all possible bounds of decency and were atrocious and utterly intolerable in a civilized community.

118.    As a direct and proximate result of Smith's actions described herein, Plaintiff has suffered, and will continue to suffer, severe emotional distress.

119.    The conduct alleged herein was conducted by Smith deliberately, consciously, willfully, wantonly, with actual malice and intent to harm Plaintiff, and with intentional disregard for her emotional health, safety, and well-being.

120.    As a direct and proximate result of Defendant's conduct, Plaintiff was sexually exploited, causing severe emotional distress to Plaintiff including, but not limited to, physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future. Due to Defendant Smith's actions, Plaintiff has sustained stress and anxiety, and will require psychological treatment.

31

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant, Antoine Smith, together with an award of compensatory and punitive damages against Defendant Antoine Smith in an amount in excess of the jurisdictional limits of compulsory arbitration, plus costs, interest, and such further and additional relief as deemed just and proper by this Honorable Court.

## COUNT IV
## VICARIOUS LIABILITY FOR VIOLATION OF 18 P.A. C.S. § 5703-INTERCEPTION, DISCLOSURE OR USE OF WIRE ELECTRONIC OR ORAL COMMUNICATIONS
## PLAINTIFF VS. DEFENDANT ROVER

121.    Plaintiff incorporates by reference the allegations contained in all previous paragraphs as if fully set forth at length herein.

122.    While staying in Defendant Smith's home, Plaintiff engaged in oral communications.

123.    Plaintiff, who was not warned about hidden cameras, had a justifiable expectation of privacy under the circumstances that her communications would not be intercepted.

124.    Defendant Smith's recording of Plaintiff with hidden cameras with live audio and video feeds is in direct violation of 18 P.A. C.S. § 5703 which prohibits the intentional interception or endeavors to intercept any wire, electronic or oral communication.

125.    Plaintiff, who was not warned about hidden cameras, had a justifiable expectation of privacy under the circumstances that her communications would not be intercepted.

126.    Defendant Smith's recording of Plaintiff with hidden cameras with video and audio capabilities is in direct violation of 18 P.A. C.S. § 5703 which prohibits the intentional interception or endeavors to intercept any wire, electronic or oral communication.

127.    Defendant Rover is vicariously liable for Defendant Smith's violation of 18 P.A. C.S. § 5703.

Case ID: 230600571

128.    Any person whose wire, electronic, or oral communication is intercepted, disclosed, or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses, or uses or procures any other person to intercept, disclose or use, such communication.

129.    Rover knew that hidden cameras were a rampant problem with Pet Owners.

130.    Rover knew that hidden cameras were often placed in bathrooms and bedrooms.

131.    Rover knowingly and recklessly placed Plaintiff in a position where she would be recorded.

132.    As a direct and proximate result of Defendant's conduct, Plaintiff was sexually exploited, causing severe injuries to Plaintiff including, but not limited to, physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future.

133.    Due to Defendant's acts and omissions individually and/or by and through their actual or apparent agents, servants and employees acted outrageously and in reckless disregard for the health and welfare of Plaintiff warranting the imposition of punitive damages.

WHEREFORE, Plaintiff, pursuant to provisions of 18 Pa. C.S.A § 5725, requests that judgment be entered in her favor and against the Defendant for actual damages of $1,000 for each unlawful interception averred herein together with interest thereon to the date of satisfaction thereof and an award also pursuant to the statute, of any and all costs, including reasonable attorneys' fees, expenses and punitive damages and other such forms of relief or remedy which this Court deems just and equitable.

Case ID: 230600571

**COUNT V**
**NEGLIGENCE**
**PLAINTIFF VS. DEFENDANT ROVER**

134.    Plaintiff incorporates by reference the allegations contained in all previous paragraphs as if fully set forth at length herein.

135.    Rover owed a duty of care to Plaintiff as a Pet Care Provider to run their business with an appropriate level of safety precautions for Providers and to exercise reasonable care in the operation of that business.

136.    At all times material hereto, Defendant Rover breached their duty with multiple acts and/or omissions including but not limited to:

a.    Permitting offline communications on the Rover platform;
b.    Facilitating in-home dog sitting services without taking appropriate measures to prevent hidden camera usage;
c.    Forcing Providers to use personal photographs to attract Pet Owners;
d.    Requiring Providers to follow Pet Owner directions on sleeping arrangements;
e.    Permitting Defendant Smith to create multiple profiles;
f.    Failing to act upon prior complaints relating to Defendant Smith;
g.    Failing to monitor Defendant Smith's interactions with Providers;
h.    Ignoring known risks of hidden cameras.

137.    As a direct and proximate result of Defendant's conduct, Plaintiff was sexually exploited, causing severe injuries to Plaintiff including, but not limited to, physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future.

138.    Due to Defendant's acts and omissions individually and/or by and through their actual or apparent agents, servants and employees acted outrageously and in reckless disregard for the health and welfare of Plaintiff warranting the imposition of punitive damages.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant Rover, together with an award of compensatory and punitive damages against Defendant Rover in an

Case ID: 230600571

amount in excess of the jurisdictional limits of compulsory arbitration, plus costs, interest, and such further and additional relief as deemed just and proper by this Honorable Court.

## COUNT VI
## <u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>
## PLAINTIFF VS. DEFENDANT ROVER

96.     Plaintiff incorporates by reference the allegations contained in all previous paragraphs as if fully set forth at length herein.

97.     Defendant Rover negligently committed the acts averred in this Complaint against the Plaintiff and thereby caused Plaintiff to suffer fear, depression, humiliation, mental anguish, and severe physical and emotional distress, directly and proximately causing harm and damages to Plaintiff.

98.     Defendant Rover created an ideal environment for Defendant Smith to prey upon and secretly record young women. Despite having the means, opportunity, and advanced knowledge to prevent Smith's behavior, Rover acted outrageously and in reckless disregard for the privacy, safety, and emotional wellbeing of Plaintiff, warranting the imposition of punitive damages. Due to Defendant Rover's actions, Plaintiff has sustained stress and anxiety, and will require psychological treatment.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant Rover, together with an award of compensatory and punitive damages against Defendant Rover in an amount in excess of the jurisdictional limits of compulsory arbitration, plus costs, interest, and such further and additional relief as deemed just and proper by this Honorable Court.

Case ID: 230600571

Respectfully submitted,

**McELDREW PURTELL**

BY:    /s/ Amanda Jonas Lorentson
John J. Coyle, Esquire
Amanda Jonas Lorentson, Esquire
***Attorneys for Plaintiff***

Dated: June 6, 2023

Case ID: 230600571

## **<u>VERIFICATION</u>**

I, Amanda Jonas Lorentson, Esquire, hereby state that I am an attorney for the Plaintiff within this matter and verify that the statements made in the foregoing Plaintiff's Complaint are true and correct to the best of my knowledge, information, and belief. The undersigned understands that the statement therein is made subject to the penalties of 18 Pa.C.S.A. Section 4904, relating to unsworn falsification to authorities.

Amanda Jonas Lorentson, Esquire

Dated: June 6, 2023

Case ID: 230600571